UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MATTHEW D. DODGE,<br><br>      Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>      Defendant. | Case No. C13-1701-JCC-BAT<br><br>**REPORT AND RECOMMENDATION** |

Mr. Dodge seeks review of the denial of his Supplemental Security Income application. He contends the ALJ erred by finding him not fully credibly, and by rejecting the opinions of Dr. Mary Lemberg, M.D., and Dr. Barbara Lui, Ph.D. Dkt. 21. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

**BACKGROUND**

Mr. Dodge is currently 44 years old, has an eighth grade education and his GED, and has worked in construction, phone sales, and the food service industry. Tr. 43, 280. On December 27, 2010, he applied for benefits, alleging disability as of January 4, 2003. Tr. 17, 194. His applications were denied initially and on reconsideration. Tr. 17. The ALJ conducted a hearing on April 5, 2012, finding Mr. Dodge not disabled. *Id*. As the Appeals Council denied Mr.

REPORT AND RECOMMENDATION - 1

Dodge's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Mr. Dodge had not engaged in substantial gainful activity since December 17, 2010.

**Step two:** Mr. Dodge had the following severe impairments: bipolar I disorder, schizoaffective disorder, post-traumatic stress disorder ("PTSD"), and polysubstance dependence (in remission, on agonist therapy).

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Mr. Dodge had the residual functional capacity to perform a full range of work at all exertional levels. He was limited to simple, repetitive tasks. He would need to work predominantly in isolation from others. He should have very limited interaction with coworkers and supervisors. He could not work in coordination with others.

**Step four:** Mr. Dodge did not have any past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Mr. Dodge can perform, he is not disabled.

Tr. 19-31.

## DISCUSSION

**A.    The ALJ Did Not Err in Finding Mr. Dodge Less Than Fully Credible**

Mr. Dodge contends the ALJ erred in his adverse credibility finding. Dkt. 21 at 4. Where, as here, there is no evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). To determine whether the claimants testimony regarding the severity of the symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation,

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *See, e.g., Fair v. Bowen*, 885 F.2d 597, 602–04 (9th Cir. 1989); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991).

### 1.     *Cognitive and Social Mental Impairments*

Mr. Dodge challenges the ALJ's finding that "[c]ontrary to his testimony, the claimant's mental record indicates that . . . he exhibits intact social and cognitive functioning." Dkt. 21 at 5; Tr. 24. The Commissioner provides no substantive response to Mr. Dodge's arguments, instead parroting the ALJ's findings. *See* Dkt. 22 at 9-10. Mr. Dodge first challenges the ALJ's consideration of cognitive functioning because "his primary limitations were related to his anxiety and not his cognitive abilities." Dkt. 21 at 5 (*citing* Tr. 272). The Court agrees. At his hearing, Mr. Dodge testified he is unable to go outside or be around people because he convinces himself people are talking about him and staring at him. Tr. 53. He further testified that, as a result, he gets shaky and hot and his vision is negatively affected. *Id.* He also testified that when he gets "really stressed" he hears voices. *Id.* Counsel for Mr. Dodge asserted he was disabled because he had been diagnosed with PTSD, major depressive disorder, rule-out schizoaffective disorder, and borderline personality disorder. Tr. 53. She further testified he experienced audio and tactile hallucinations, changes in mood, and anxiety; he had difficulty in social settings and with change; he tends to isolate socially; he spends a lot of time alone in his apartment; and he has poor stress tolerance. Tr. 41.

The mini mental status examination forms the ALJ relied upon to discredit Mr. Dodge's testimony state the exams "quantify cognitive function and screen for cognitive loss." *See, e.g.,*

REPORT AND RECOMMENDATION - 3

Tr. 826. The ALJ's use of Mr. Dodge's cognitive scores to discount his testimony was improper; the ALJ failed to provide a clear and convincing reason to discount Mr. Dodge's credibility on this basis because he did not testify to disabling limitations affecting his cognitive capabilities.

Additionally, the evidence the ALJ relied upon in supporting her argument that Mr. Dodge exhibited "intact social functioning" is clearly selective, and thus, insufficient. *See Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (ALJ improperly "developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports [and] paraphrasing of record material [such that it] is not entirely accurate regarding the content or tone of the record."). In discussing a March 2010 evaluation, the ALJ noted Mr. Dodge's mental status exam indicated he exhibited "pleasant and cooperative behavior, interactive social contact, normal psychomotor activity and speech, and appropriate thought contact." Tr. 24 (*citing* Tr. 599). This description makes no mention of the provider's opinion, based on her observations, that Mr. Dodge had a number of moderate to severe functional mental limitations, including depressed mood and mood swings, panic attacks/anxiety, insomnia, immediate memory impairments, concentration, and isolating behaviors. Tr. 594. The ALJ also failed to mention that the provider found Mr. Dodge's appearance "bizarre," his thought process "slow," and his judgment "poor." Tr. 599. In another example, the ALJ focused on Mr. Dodge's cognitive capabilities while failing to acknowledge a physician's findings that he suffered from marked depression and severe mistrust, social anxiety and isolating behaviors, difficulty concentrating, fear, and fidgeting. *Compare* Tr. 24 *with* Tr. 822. The physician further found Mr. Dodge had severe limitations in his ability to understand and follow instructions, which she attributed to his anxiety. Tr. 823-24. In another instance, though the ALJ noted that Mr. Dodge's primary care provider observed he had "no unusual anxiety or evidence of depression,"

REPORT AND RECOMMENDATION - 4

Tr. 24, she failed to discuss the doctor's notes that Mr. Dodge had a "complex mental health problem including anxiety, self inflicted injuries, suicidality, trust problems, and substance abuse. He is getting care outside. . . I reassured him that he is doing the right thing by getting the care he needs and working on an active recovery program," Tr. 624; *see also* Tr. 629, 636, 851, 860. This pattern continues throughout the ALJ's decision, demonstrating selection bias in using the record to discount Mr. Dodge's credibility.[3] Thus, in discounting Mr. Dodge's credibility, the ALJ simply ignored substantial evidence tending to support his claims. Although it is the duty of the ALJ to resolve conflicts and ambiguities in the evidence in the record, the ALJ's failure to discuss this other, contradictory evidence and self-reporting indicates that she did not properly do so in this instance. Additionally, the error is not harmless because the ALJ discounted a number of provider opinions on the basis that Mr. Dodge's social functional

---

[3] Compare Tr. 24 with Tr. 616-17 (provider notes "though he has had the biggest improvement from discontinuing his substance use. . . [h]e remains quite impaired and relies on his providers at THS for medications, managing and remembering his appointments. . . He does seem to have frequent mixed episodes and rapid cycling without clear resolution of symptoms, again, even after discontinuing substances."); Tr. 617 (provider opines Mr. Dodge has "rapid and cycling moods," he "cannot perform work activities on a consistent basis or maintain regular attendance in the workplace," he could "not complete a normal workday or workweek without significant and problematic interruption from his psychiatric conditions."); Tr. 725 (Mr. Dodge had "[s]ome stereotyped rocking back and forth motions," and a "blunted, anxious affect. Appears guarded."); Tr. 829, 831 (provider assesses social anxiety, depression, mistrust of people, fearfulness, fidgeting; opines Mr. Dodge is "not able to work at the present time due to his emotional state. He would be too anxious, fearful, mistrustful and depressed."); Tr. 691 (Mr. Dodge appeared extremely overwhelmed with suicidal tendencies and was "visibly struggling"); Tr. 717 (Mr. Dodge exhibited paranoia and anxiety with the feeling of being watched); Tr. 718-19 (Mr. Dodge appeared "highly anxious and unable to modulate his anxiety"); Tr. 728 (Mr. Dodge had "difficulty with minor alterations in his plans and/or schedule. Small changes become difficult for him to manage or cause for mistrust of helpers."); Tr. 752 (he was "quite anxious with agitated psychomotor"); Tr. 794 (Mr. Dodge had "difficulty in reading other's intentions, often feeling they are 'lying' to him or deliberately going to harm him in some way."); Tr. 796 (Mr. Dodge was "having difficulty with the therapeutic connection and staying present in the relationship" and was "[p]ossibly feeling threatened by the clinician's boundary setting around phone calls outside the session"); Tr. 870 (Mr. Dodge was "anxious, talkative, constant motion (hands or legs)").

limitations were inconsistent with the longitudinal record.  *See* Tr. 26-30.

### 2.    *Activities of Daily Living*

The ALJ discounted Mr. Dodge's credibility because she found his allegations of disabling limitations were inconsistent with his activities of daily living.  Tr. 25.  Specifically, the ALJ found that Mr. Dodge was not credible because his daily activities were "not limited to the extent one would expect . . . and he also described his activities quite differently in his function reports than he did at the hearing."  *Id.*  The Commissioner concedes Mr. Dodge's activities "do not necessarily indicate [an] ability to perform work activities," but argues they are inconsistent with his alleged level of impairment.  Dkt. 22 at 10-11.  The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled."  *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (*quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  However, a claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony"; or that are transferable to a work setting."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284  n.7 (9th Cir. 1996).

In evaluating his activities of daily living, the ALJ called into question activities described in Mr. Dodge's three function reports.  Tr. 25.  The Court notes that Mr. Dodge's first two function reports were completed in 2009, predating his alleged onset date of December 17, 2010.  Evidence that predates the alleged period of disability is of limited relevance.  *Carmickle v. Astrue*, 533 F.3d 1155, 1165 (9th Cir. 2008).  Additionally, as Mr. Dodge observes, the ALJ

failed to acknowledge that he was homeless and living in a "tent city" in 2009.[4]  Dkt. 21 at 9; *see also* Tr. 211, 245.  In the absence of this context, the ALJ distorts the record.  Mr. Dodge described going to the library to read and use the internet in the context of being homeless and living in a "tent city."  Tr. 245.  He described his daily activities as "hygiene, bus to [Therapeutic Health Services] THS, follow-up on appts., home-bus."  Tr. 211.  He took the bus because he has no car or license.  Tr. 248.  The ALJ noted Mr. Dodge stated he "walks a lot and can walk forever (6E)."  Tr. 25.  In fact, Mr. Dodge reported he can walk "forever" and never needs to rest.  Tr. 250.  Nevertheless, the statement is not entirely relevant to discounting daily activities because Mr. Dodge does not allege he has exertional limitations.  *See, e.g.,* Tr. 79.

The ALJ also noted Mr. Dodge for left his apartment, used public transportation, maintained a clean apartment, read, and purchased food.  Mr. Dodge testified he takes the bus to obtain his methadone treatment every day.  Tr. 59.  He gets his treatment at 10:30 a.m. because at that time, the treatment center is virtually empty.  Tr. 59.  He testified he cannot miss a dose because he would have to "start all over" for ninety days of consistent dosing so that he can qualify to get "carries" on the weekend.  Tr. 68.  Additionally, as a condition of probation, Mr. Dodge must submit to urinalysis ("UA") to demonstrate it is not "dirty."[5]  *See* Tr. 46.  Mr. Dodge testified that, if he failed a UA test, he would go to jail.  Tr. 46.  Mr. Dodge also stated he purchases sandwiches or other "really easy stuff" from the Rite Aid store right by his house and

---

[4] The ALJ refers to the tent city as a "communal housing facility."  *See* Tr. 25.

[5] The UAs test for "Meth/Amphetamines, Benzo, Cocaine, Opiates, Methadone."  *See* Tr. 908.  Mr. Dodge tests positive for methadone.  *Id.*  The Court notes that although the ALJ observed "[d]rug testing results that are in the file since [March 2011] have been negative," Tr. 23; *see also* Tr. 927-31, the ALJ concluded Mr. Dodge's occasional failures to take the tests "suggests his symptoms of paranoia that he says prevent him from being able to leave his residence are not as severe as alleged or he would have made every effort to take tests that would have earned him the ability to carry doses home and fewer days that he has to appear at the methadone clinic," Tr. 23.  The statement fails to acknowledge the fact that the UA tests and the weekday methadone treatments still require that Mr. Dodge leave his apartment.

REPORT AND RECOMMENDATION - 7

bus stop, and that as a result, he rarely has to do dishes. Tr. 61-62; 615. After he returns from the methadone clinic, he testified, he sleeps all day long and then watches TV.[6] Tr. 65. These activities are not inconsistent with someone who has severe polysubstance dependence in addition to severe mental impairments. *See* Tr. 19.

However, the ALJ's finding that Mr. Dodge's statements that he is "paranoid and cannot go out" contradicts his other testimony that he goes out, takes the bus, and goes shopping, Tr. 25, was supported by substantial evidence. *See* Tr. 53 ("I really can't go outside."); Tr. 272 ("I cannot be on a bus, in a grocery store, or at an appointment."). Accordingly, the Court recommends affirming the ALJ's credibility finding with respect to Mr. Dodge's activities of daily living.

**3.    *Substance Use***

The ALJ also discounted Mr. Dodge's credibility because he made inconsistent statements about his substance use. Tr. 23-24. Mr. Dodge concedes that he made inconsistent statements regarding his substance use, but argues that 1) many of the statements were made prior to the time period under consideration; and 2) testimony made during the period under consideration regarding his substance use cannot be used as a "global rejection" of his other testimony. Dkt. 21 at 11. The Commissioner does not address these arguments, arguing instead that Mr. Dodge made a number of inconsistent statements. Dkt. 22 at 6-8. The Court agrees that statements made prior to the period under consideration may not be used to impeach his credibility during the period under consideration, but does not agree that inconsistencies made

---

[6] The ALJ also noted Mr. Dodge reported maintaining a very clean apartment, but testified he has trouble keeping his apartment clean and he has a number of "infractions." Tr. 25. Mr. Dodge's testimony reveals he has failed "maybe just twice," Tr. 63, and his function report indicates his definition of "very clean" is keeping his shoes and clothes organized and sweeping the floor, but he has no dishes or trash in his apartment. Tr. 274. Mr. Dodge reported this cleaning takes 3½ hours. Tr. 274.

REPORT AND RECOMMENDATION - 8

1  during the period under consideration cannot be used to discount his overall credibility.  Mr.
2  Dodge has not directed the Court to, and the Court is not aware of, any relevant legal authority
3  that limits an adverse credibility determination in such a manner.  *Cf. Thomas v. Barnhart*, 278
4  F.3d 947, 959 (9th Cir. 2002) (finding that lack of candor regarding substance abuse supported
5  the ALJ's negative conclusions about the claimant's physical description of her pain).

6  The ALJ also discounted Mr. Dodge's credibility on the basis that his unemployment was
7  attributed to his criminal history rather than disability, and because his refusal to take several UA
8  tests raised concerns about his truthfulness.  Tr. 24-25.  Mr. Dodge takes issue with both of these
9  reasons.  *See* Dkt. 21 at 11, 13.  The Court, however, need not determine whether the ALJ erred
10 because any error would not negate the validity of the overall credibility determination and thus
11 would be harmless.  *See Carmickle*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous
12 reason among other reasons to discount a claimant's credibility is at most harmless error if the
13 other reasons are supported by substantial evidence and the erroneous reason does not negate the
14 validity of the overall credibility determination).

15 In sum, the Court recommends affirming the ALJ's credibility determination.

16 **B.    The ALJ Erred Err in Rejecting the Medical Experts' Opinions**

17 When a treating or examining doctor's opinion is not contradicted by another doctor, the ALJ
18 may reject the opinion only for "clear and convincing" reasons.  *Lester v. Chater*, 81 F.3d 821, 830
19 (9th Cir. 1988).  A treating physician's opinions may be discounted when it is "in the form of a
20 checklist, did not have supportive objective evidence, was contradicted by other statements and
21 assessments of [the claimant's condition], and was based on [the claimant's] subjective
22 descriptions of pain[,]" as well as when that opinion is "conclusory, brief, and unsupported by
23 the record as a whole . . . or by objective medical findings[.]"  *Batson v. Commissioner*, 359 F.3d

REPORT AND RECOMMENDATION - 9

1190, 1195 (9th Cir. 2004).

Where a treating or examining doctor's opinion is contradicted by that of another doctor, it may not be rejected without "specific and legitimate reasons based on substantial evidence in the record." *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *accord Andrews*, 53 F.3d at 1043.  Rather than merely stating his conclusions, the ALJ "must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

### 1. *Dr. Mary Lemberg, M.D.*

Examining psychiatrist Dr. Lemberg provided a comprehensive psychiatric evaluation of Mr. Dodge on March 26, 2011.  Tr. 611.  The ALJ adopted Dr. Lemberg's opinion that Mr. Dodge could perform simple and repetitive tasks.  Tr. 28.  However, the ALJ disregarded the opinion that Mr. Dodge "would have difficulty adapting to new environments [and] . . . was unable to perform work activities on a consistent basis or maintain regular attendance due to his psychiatric conditions," finding the claimant's behavioral and communicative findings from his examination were inconsistent with his longitudinal findings, as well as his reported activities.  Tr. 27-28.  The ALJ also rejected the opinion on the basis that Mr. Dodge gave Dr. Lemberg misinformation regarding his last drug and alcohol relapse, which led the ALJ to conclude that Mr. Dodge "has also not been honest with Dr. Lemberg as to the nature of his psychological symptoms."  Tr. 28.

The Commissioner contends the ALJ properly discounted Dr. Lemberg's opinion because "an ALJ may reject a medical opinion that is brief, conclusory, and inadequately supported by clinical findings, premised upon a claimant's discredited subjective complaints, or contradicted by a claimant's daily activities."  Dkt. 22 at 17 (*citing Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.

REPORT AND RECOMMENDATION - 10

2002)). As discussed above; however, the ALJ's summary of Mr. Dodge's longitudinal record, particularly with respect to his social impairments, is flawed. *See supra*, Section A.1. As a result, the ALJ's rejection of Dr. Lemberg's findings regarding Mr. Dodge's "behavioral and communicative" findings are similarly tainted. *See* Tr. 28. The ALJ's rejection of examination findings on the basis that they were inconsistent with Mr. Dodge's "reported activities" is also deficient. As the Court has previously discussed, Mr. Dodge's activities of daily living are not inconsistent with his allegations of disabling limitations; rather, portions of Mr. Dodge's testimony regarding his daily activities was contradictory. *See supra*, Section A.2. But there is no indication Dr. Lemberg's opinion was based on the conflicting testimony. *See* Tr. 611-17. "[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r, Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) (*citing Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) ("In sum, the ALJ appears to have relied on her doubts about [the claimant's] overall credibility to reject the entirety of [the examining psychologist's] report, including portions that [the psychologist] deemed to be reliable.").

The Commissioner also argues that the ALJ's decision should be upheld because the evidence is susceptible to more than one rational interpretation and the ALJ "interpreted the evidence rationally." Dkt. 22 at 17 (*citing Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008)). However, the ALJ's determination need only be upheld if the "proper legal standards" have been applied and "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986). In this case, by not fully accounting for all of the evidence, the ALJ failed to fully account for the nature of Mr. Dodge's impairments. *See Reddick*, 157 F.3d at 722–23.

Finally, with respect to the ALJ's rejection of the opinion based on Mr. Dodge's sobriety, though it is true that "an ALJ may reject a treating physicians opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible," *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), the Commissioner has not demonstrated that Dr. Lemberg's opinion was premised upon, to a large extent, Mr. Dodge's reports (or lack thereof) of his alcohol or drug use.  Accordingly, the Court finds the ALJ committed harmful legal error.  On remand, the ALJ should reevaluate Dr. Lemberg's opinion, and as necessary, revise Mr. Dodge's maximum RFC[7] and conduct new step four and step five assessments.

### 2. *Dr. Barbara Lui, Ph.D.*

Mr. Dodge challenges the ALJ's treatment of Dr. Lui's findings and opinions.[8]  Treating psychologist Dr. Lui completed psychological/psychiatric evaluations in February 2011[9] and January 2012, and a Medical Source Statement of Ability to Do Work-Related Activities (mental) ("medical source statement") in April 2012.  The record also shows Dr. Lui evaluated Mr. Dodge on at least seven occasions between January 12, 2011 and January 26, 2012.  *See* Tr.

---

[7] The Court notes that Mr. Dodge's RFC does not account for Dr. Lemberg's opinion that he is unable to maintain regular attendance or perform work activities on a consistent basis.  *See* Tr. 27-28, 617.  At his hearing, the Vocational Expert ("VE") testified an individual holding the jobs the VE identified could not miss more than one day of an unexcused absence and repetitive tardiness would result in termination.  Tr. 73.  Accordingly, the Court disagrees with the Commissioner's argument that the ALJ's RFC and step five finding was based on substantial evidence and was free of legal error.  Dkt. 22 at 18-20.

[8] The Commissioner provides almost no substantive response to Mr. Dodge's arguments, with the exception of her discussion regarding Dr. Lui's alleged advocacy, discussed *infra*.  *See* Dkt. 22 at 13-15.

[9] The parties refer to the date of the examination as February 2011; however, the record shows the examination date was January 12, 2011, but the medical record was signed on February 10, 2011.  Tr. 825.  On February 10, 2011, Dr. Lui indicated in progress notes that "Matthew did not attend this paperwork session during which I completed his Psychiatric Evaluation for DSHS based on his mental health intake evaluation and psychosocial summary as well as other THS records."  Tr. 705.  Progress notes for the date of the examination, January 12, 2011, indicate over 120 minutes of services.  Tr. 703-04.

703-05, 798, 799, 800, 829, 894, 901.  In February 2011, Dr. Lui observed Mr. Dodge had marked depression, and severe mistrust, social anxiety, concentration, fearfulness, and fidgeting/pacing/inability to sit still.  Tr. 822.  Dr. Lui opined Mr. Dodge had severe limitations in his ability to follow simple or complex instructions and to learn new tasks, communicate or perform effectively in a work setting with limited public contact, and maintain appropriate behavior in a work setting.  Tr. 823-24.  As instructed by the evaluation form, Dr. Lui explained the discrepancies between Mr. Dodge's mental status exam and his severity ratings by attributing the severity ratings to his anxiety, despite the fact he is "intellectually capable."  Tr. 823.  Dr. Lui opined Mr. Dodge was "not capable to [*sic*] any paid work until he gets stabilized."  Tr. 824.  According to the medical record, the examination took over two hours, and the opinion was rendered based on Mr. Dodge's mental health intake evaluation, psychosocial summary, and his other office records.  Tr. 703-05, 822, 825.

In January 2012, Dr. Lui again observed Mr. Dodge's social anxiety, depression, mistrust of people, distractibility, fearfulness, and fidgeting/nervousness.  Tr. 829.  She conducted a clinical interview, and opined Mr. Dodge was "not able to work at the present time due to his emotional state.  He would be too anxious, fearful, mistrustful, and depressed. . . He needs to focus on maintaining the status quo with regard to his treatment program at THS and his ADLs."  Tr. 831.

In April 2012, Dr. Lui completed a medical source statement for Mr. Dodge.  Tr. 918-20.  She identified marked impairments in his ability to understand, remember, and carry out instructions; to make judgments on simple work-related decisions; and to respond appropriately to work pressures and changes in a routine work setting.  Tr. 918-19.  In support of her opinions, Dr. Lui stated:

REPORT AND RECOMMENDATION - 13

> Matthew brings in all paperwork from the state or mail that he doesn't understand. Needs assistance filling out and understanding forms. Needs reminders for appointment. Becomes paralyzed from anxiety in social situations, making decision making in work place difficult. . . . This is based on how Matthew manages pressures of daily life skills. He reports feeling overwhelmed by ADLs like eating, cleaning, laundry etc and often naps and isolates and does not complete these tasks due to feeling too overwhelmed. It can take him a long time to complete the goal of making a Dr.'s appointment due to anxiety of appointment, but also riding the bus to get there and being away from home in general. He is very withdrawn. . . Matthew has very high anxiety and mood instability. His depression can be debilitating, making basic self care tasks very difficult for him to complete.

Tr. 918-19.

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician or non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Yet the ALJ did not give controlling weight to Dr. Lui's opinions; rather, she gave "some weight" to a portion Dr. Lemberg's opinion, and "significant weight" to the opinions of two state agency psychological consultants who reviewed some of Mr. Dodge's records.[10] Tr. 28. The Court further notes that these opinions were issued in March 2011, April 2011, and August 2011; respectively, and that only Dr. Lui's February 2011 examination had taken place at that time. *See* Tr. 79-104; 611-17. It is not at all clear that any of those opinions took even Dr. Lui's February 2011 opinion into consideration. *See id.* Additionally, the Court notes that the ALJ did not clearly identify a conflict between Dr. Lui's opinions and the opinions of Dr. Lemberg or Drs. Eisenhauer and Kraft, the state agency consultants.[11] Nevertheless, "[t]he opinion of a

---

[10] Mr. Dodge contends this was harmful error because the nonexamining consultants were "the only ones to suggest that Plaintiff would be able to sustain work activity." Dkt. 21 at 21.

[11] The Commissioner presumes, without explanation, that the specific and legitimate standard applies to the Court's evaluation of Dr. Lui's opinions. Dkt. 22 at 12. But even if this were true, the ALJ still erred because she failed to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence," *Magallanes*, 881 F.2d at 751, or to "set forth his own

REPORT AND RECOMMENDATION - 14

nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d 821 at 831 (*citing Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)).  Thus, the ALJ could not rely upon the opinions of the state agency consultants to reject the opinions of Dr. Lui or Dr. Lemberg.

The ALJ gave Dr. Lui's opinions "little weight," because the opinions made "minimal reference to objective evidence," relied solely upon Mr. Dodge's own self-reports, were inconsistent with the mental status exams, were inconsistent with the longitudinal record, and because Dr. Lui was improperly advocating on Mr. Dodge's behalf.  Tr. 27-29.  The ALJ erred with respect to her specific bases for discounting Dr. Lui's opinions.  Dr. Lui substantiated her opinions with psychological tests and objective observations of Mr. Dodge's symptoms.  Dr. Lui indicated she reviewed Mr. Dodge's THS records prior to her February 2011 evaluation.  Tr. 821.  Additionally, she administered a two-hour mental health intake, mini-mental status examination (demonstrating intact cognitive functioning), and a Global Appraisal of Individual Needs-Short Screener ("GAIN-SS").  Tr. 703-04, 826.  Dr. Lui explicitly attributed the opined limitations to Mr. Dodge's anxiety, rather than cognitive capacity.  Tr. 823.  Her January 2012 evaluation indicates she conducted a lengthy clinical interview; personally observed most of Mr. Dodge's symptoms; and administered a mental status exam during which Mr. Dodge appeared hyperactive and erratic, made fair eye contact, had flow disturbance in his speech, and appeared anxious and paranoid.  Tr. 829-35.  With regard to Dr. Lui's April 2012 opinion, the ALJ simply stated the physician's reasons were an "insufficient basis for the opined limitations.  Tr. 29.  This is neither clear and convincing, nor specific and legitimate.  The ALJ's findings concerning

---

interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d at 725.

REPORT AND RECOMMENDATION - 15

objective evidence are not supported.

The ALJ also erred when she found Dr. Lui improperly relied upon Mr. Dodge's self reports regarding his psychological symptoms because, as discussed above, the ALJ did not properly discredit Mr. Dodge's symptoms concerning his mental impairments. *See Tommasetti*, 533 F.3d at 1041. Additionally, the ALJ improperly rejected the doctor's opinion by questioning the credibility of Mr. Dodge's complaints where the doctor did not discredit those complaints and supported her ultimate opinion with her own observations. *Ryan*, 528 F.3d at 1199–1200.

Similarly, the ALJ erred in concluding Dr. Lui's opinions should be discounted because they were inconsistent with Mr. Dodge's mental status examinations. As this Court has discussed, Mr. Dodge's impairments are social, not cognitive. *See supra*, Section A.1. To simply conclude that an opinion is internally inconsistent because "the claimant had a perfect score on a MMSE," Tr. 27, is a gross distortion of the record and disregards the precise impairment the ALJ found severe. While discounting a physician's opinion due to inconsistencies between the opinion and the physician's own notes or observations is "a permissible determination within the ALJ's province," *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005), substantial evidence does not support the ALJ's determination. An ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result." *Gallant*, 753 F.2d 1450, 1455-56 (9th Cir. 1984) (cited omitted).

Finally, the ALJ also erred when she concluded that Dr. Lui's "expressed awareness" that her opinion was required by DSHS for continuation of funding indicated a lack of objectivity sufficient to discount her opinion. *See* Tr. 27. Although her opinions may have been favorable to Mr. Dodge, the ALJ points to no evidence of actual impropriety. *See Lester*, 81 F.3d at 832 (*quoting Ratto v. Sec'y, Dept. of Health and Human Servs.*, 839 F.Supp. 1415, 1426 (D.Or.1993)) ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits."); *see,*

REPORT AND RECOMMENDATION - 16

*also, Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (*citing Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996)) (the source of report is a factor that justifies rejection only if there is evidence of actual impropriety or no medical basis for opinion).[12] Thus, the ALJ's rejection of Dr. Lui's opinion on this basis was also improper.

The ALJ's reasons for rejecting Dr. Lui's opinions were not clear and convincing, nor specific and legitimate, and were not supported by the record. As a result, the rejection of Dr. Lui's opinions was legal error. On remand, the ALJ shall reevaluate the opinions of Dr. Lui, and as necessary, revise Mr. Dodge's maximum RFC and conduct new step four and step five assessments.

### CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings.

On remand, the ALJ should reevaluate the opinions of Dr. Mary Lemberg and Dr. Barbara Lui, and as necessary, reevaluate the longitudinal record, Mr. Dodge's credibility, and Mr. Dodge's maximum RFC; and conduct new step four and step five assessments.

---

[12] The Commissioner asserts that this circuit "has held that the opinion of a doctor who is acting as an advocate is properly discounted." Dkt. 22 at 15 (*citing Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992); *Saelee v. Chater*, 94 F.3d 520, 522-23 (9th Cir. 1996). In *Matney*, the court found the ALJ provided specific and legitimate reasons for disregarding a physician's opinion because the physician had "agreed to become an advocate and assist in presenting a meaningful petition for Social Security benefits." *Matney*, 981 F.2d at 1020. There is no evidence of such an agreement to advocate here. In *Saelee*, the court affirmed the ALJ's finding that a physician's report was "untrustworthy because it was obtained solely for the purposes of the administrative hearing, varied from [the physician's] own treatment notes, and was worded ambiguously in an apparent attempt to assist [the claimant] in obtaining social security benefits." *Saelee* , 94 F.3d at 523. Such findings are not present in this case, either. The final case cited by the Commissioner, *Hofslien v. Barnhart*, 439 F.3d 375 (7th Cir. 2006), is also not applicable for several reasons. First, it is a Seventh Circuit opinion, and is therefore not binding on this Court. Second, the proposition cited by the Commissioner is dicta, and thus not a binding determination on any court. Third, it conveys a sentiment (that is, that it is "well known" that many physicians "will often bend over backwards to assist a patient in obtaining benefits") that has not been adopted by this circuit. Thus, the Court accords no weight to the sentiment cited by the Commissioner.

REPORT AND RECOMMENDATION - 17

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **June 4, 2014.** If no objections are filed, the matter will be ready for the Court's consideration on **June 5, 2014**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 21st day of May, 2014.

BRIAN A. TSUCHIDA
United States Magistrate Judge